IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| PEGGY SUE BUSBY, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> vs. ) <br> ) <br> TIMOTHY A. LOHMAR, Prosecuting ) <br> Attorney of St. Charles County, Missouri, ) <br> in his individual capacity, ) <br> ) <br> *Serve at*: St. Charles County Prosecuting Atty. ) <br> 300 N. Second Street, Suite 601 ) <br> St. Charles, MO 63301 ) <br> ) <br> REBECCA SHAFFAR, Assistant ) <br> Prosecuting Attorney of St. Charles County, ) <br> Missouri, in her individual capacity, ) <br> ) <br> *Serve at*: St. Charles County Prosecuting Atty. ) <br> 300 N. Second Street, Suite 601 ) <br> St. Charles, MO 63301 ) <br> ) <br> ST. CHARLES COUNTY, ) <br> ) <br> *Serve at*: Harold Ellis, County Counselor, ) <br> 100 N. Third Street, Suite 216 ) <br> St. Charles, MO 63301 ) <br> ) <br> CHRIS GOLET, Detective- St. Peters, ) <br> Missouri Police Department, in his ) <br> individual capacity, ) <br> ) <br> *Serve at*: St. Peters Police Department ) <br> 1020 Grand Teton Drive ) <br> St. Peters, MO 63376 ) <br> ) | Case No: <br><br><br><br><br><br><br><br> JURY TRIAL DEMANDED |

| | |
|---|---|
| NICOLE MAYNARD, Detective- St. Peters, Missouri Police Department, in his individual capacity, | ) ) ) ) |
| *Serve at*:     St.  Peters Police Department               1020 Grand Teton Drive               St. Peters, MO 63376 | ) ) ) ) |
|              *Defendants*. | ) ) |

## COMPLAINT AT LAW

COMES NOW Plaintiff, Peggy Sue Busby, by and through her attorney, and complaining of Defendants, TIMOTHY A. LOHMAR, REBECCA SHAFFAR, ST. CHARLES COUNTY, CHRIS GOLET and NICOLE MAYNARD, states as follows:

### JURISDICTION AND VENUE

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 et seq.; the Judicial Code, 28 U.S.C. §§ 1331 and 1343 (a); and the Constitution of the United States.  This court has jurisdiction of the action pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the pendant state law claims as codified in 28 U.S.C. §1367 (a).

2. Venue is proper under 28 U.S.C. §1391 (b) because the events giving rise to Plaintiff's claims occurred in this judicial district and, on information and belief, at least one Defendant is a resident of this district and all Defendants reside in the State of Missouri.

### PARTIES

3. Plaintiff, Peggy Sue Busby, is a resident of the State of Missouri.

4. Defendant Timothy A. Lohmar was at all times relevant here and employed as the Prosecuting Attorney for the County of St. Charles, Missouri.  Defendant Lohmar is sued in his individual capacity.

5. Defendant Rebecca Shaffar was at all times relevant here and employed as an Assistant Prosecuting Attorney for the County of St. Charles, Missouri.  Defendant Shaffar is sued in her individual capacity.

6. Defendant St. Charles County is a local county government any political subdivision organized and existing pursuant to Missouri law.  Defendant St. Charles County employs Defendant Lohmar and Defendant Shaffar.

7. Defendant Chris Golet ("Defendant Golet") was at all times relevant herein employed as a police officer in the St. Peters Police Department.

8. Defendant Nicole Maynard ("Defendant Maynard") was at all times relevant herein employed as a police officer in the St. Peters Police Department.

9. The Defendant Officers engaged in the conduct complained of under the color of state law and in the course and scope of their employment as police officers with the City of St. Peters.  Each of the Defendant Officers are sued in their individual capacity.

## FACTUAL ALLEGATIONS

10. That on Friday, August 17, 2012, Defendant Golet and Defendant Maynard were contacted with regard to an allegation that Plaintiff, Peggy Sue Busby, had sexually assaulted a disabled 27-year-old woman, S.P.

11. That Plaintiff, Peggy Sue Busby, was employed as an in-home caregiver for S.P.

12. S.P.'s mother, Cassie Pettit, met with Defendants: Golet and Maynard to make the report.  Ms. Pettit reported that S.P.  is severely disabled and had been diagnosed with tuberous sclerosis and that S.P. cannot speak, can only partially control her body movements, is confined to a wheelchair most of the time, and has frequent seizures. S.P. wear Depends undergarments and must be changed as needed.  Ms. Pettit stated that she employs six in-home personal assistants help her take care of S.P.

13. That Ms. Pettit reported to Defendants Golet and Maynard that Plaintiff had worked a total of 11 shifts with S.P.  Five of those shifts occurred while Plaintiff was alone in the residence with S.P.  Ms. Pettit stated that she recently noticed S.P. had been very combative towards Plaintiff.  Ms. Pettit became suspicious of Plaintiff's interactions with S.P. and reviewed recent video footage taken inside the residence.

14. Ms. Pettit reported that in reviewing the video footage she observed several incidents that she believed were sexual in nature.  These alleged incidents occurred on August 13, 2012, August 14, 2012 and August 16, 2012

15. Defendant's Golet and Maynard observed Ms. Pettit's video footage:

    a. Video footage from August 13, 2012, includes the period from 10:00 AM to 12:00 PM and 1:00 PM to 2:00 PM.  Unless otherwise noted, S.P. was sitting on the living room couch during this period.  Relevant portions of the footage include the following:

- 10:00 S.P., Plaintiff and Karen Arnold are together in the living room for most of the time until 10:29.

- 10:09 Arnold puts her bare hand up S.P.'s shorts and underneath her briefs for 10 seconds and what appears to be a check for urine in the briefs.  In the process, S.P. crosses her legs (left ankle under right knee).  (Plaintiff is not in the video frame and may be out of the room.)

- 10:17 while sitting next Arnold, S.P. crosses then uncrosses her legs several times.

- 10:20 Plaintiff sits next to S.P. on the couch for the next 9 minutes talking to her and to Arnold (who is in and out of the frame).  S.P. does nothing to indicate she is uncomfortable.

- 10:29 Arnold, with her purse and travel mug in hand, appears to leave the house.

- 10:35 Plaintiff puts her bare hand up S.P.'s shorts for 43 seconds and what appears to be a check for urine in the briefs.  It appears that Plaintiff's fingers are inside the briefs at times.

- 11:06 Plaintiff sits next to S.P. for the next 9 minutes to reads a book to her.  Several times, Plaintiff appears to attempt to wipe S.P.'s face with a washcloth, but S.P. resists.

- 11:27 In the bedroom, Plaintiff transfers S.P. from the wheelchair to the bed.  She lays S.P. down and changes S.P.'s briefs.  Plaintiff

  removes S.P.'s briefs and disposes of them, then put on gloves and wipes the perineal area with the disposable wet wipes for 1 ½ minutes before putting clean briefs on S.P.

- 1:00 Plaintiff is sitting on the couch, appearing to do paperwork. S.P. is lying on the couch with her calves and feet lying on Plaintiff's lap.

- 1:04 While still lying with her feet on Plaintiff's lap, S.P. uses her right foot to push Plaintiff in the upper left arm. It is not clear whether she is attempting to push Plaintiff away or simply stretching her legs. S.P. crosses her legs, with her left leg remaining on Plaintiff's lap and her right ankle resting on her left knee.

- 1:07 With S.P. lying, length-wise, on the couch and Plaintiff standing next to her, Plaintiff places her bare hand underneath S.P.'s shorts for 7 seconds in the groin area. It is unclear whether Plaintiff places her fingers underneath S.P.'s briefs.

b. Video footage from August 14, 2012, includes the period from 10:00 a.m. to 1:00 p.m. and 3:00 p.m. to 4:00 p.m. Relevant portions of the footage include the following:

- 10:07 S.P., sitting about a foot to the left of Plaintiff on the couch, uses her right foot to push Plaintiff's left calf away. Karen Arnold is sitting in an easy chair adjacent to the couch. S.P. puts her legs in Plaintiff's lap and keeps them there for the next 5 minutes, occasionally fidgeting with her feet, pushing on Plaintiff's legs.

- 10:18 With Arnold apparently now out of the house, Plaintiff sits on the couch to S.P.'s left and reads a book to her for the next 27 minutes. The book appears to have accompanying CD's and Plaintiff occasionally taps her feet as she reads the book.

- 10:20 As she's reading S.P. the book, Plaintiff reaches for her hand. For the next 25 minutes, the two hold hands and play with each other's fingers. S.P. does not appear uncomfortable.

- 10:55 In the bedroom, Plaintiff transfers S.P. from the wheelchair to the bed. She lays S.P. down and, without gloves on, removes her shorts and puts a new changing pad underneath her.

- 11:00 With gloves on now, Plaintiff tears the sides of S.P.'s briefs and folds the front between S.P.'s legs towards the bed. S.P. has apparently had a bowel movement. Plaintiff cleans the perineal area with several disposable wet wipes, placing the used ones in the folded down front of the soiled briefs.

- 11:03 Plaintiff turns S.P. on her sides, removes the soiled briefs, and disposes of them. She puts on new gloves. S.P. is now out of the frame, but she appears to still be on her side as Plaintiff uses wipe after wipe to apparently clean S.P.'s anal area and buttocks.

- 11:09 With S.P. apparently still on her side, Plaintiff get three paper towels. She puts on a new pair of gloves, then uses perineal spray

on S.P. and on a paper towel. She uses the paper towel to continue cleaning S.P. With S.P. outside of the frame, it is unclear what part of S.P.'s body Plaintiff is cleaning.

- 11:12 Plaintiff turns S.P. over so that she is returned to a lying position. She again cleans the perineal area with several wet wipes over the course of two minutes.

- 11:15 Plaintiff puts the safety rail on the bed and appears to look for something in the bedroom. She leaves the room and returns a minute later with 3 wet paper towels.

- 11:19 With a new set of gloves on, Plaintiff appears to use the damp paper towels to clean the groin area, although that part of S.P.'s body is out of the frame.

- 11:20 The lower portion of S.P.'s vaginal area can be seen in the video. As Plaintiff appears to wipe from top to bottom, the wet wipe or paper towel goes in and out of the frame. Plaintiff wipes S.P's vaginal area for 2 minutes. She then leaves the room with what appears to be a paper towel. She returns with what appears to be a damp paper towel.

- 11:25 With a new set of gloves on, Plaintiff resumes wiping S.P.'s vaginal area for 8 more minutes with what appears to be wet wipes. During this time, S.P. crosses her legs (right ankle on left knee) 9 times.

- 11:36 Again, with a new set of gloves on, Plaintiff continues wiping S.P.'s vaginal area for another 3 minutes.  S.P. crosses her legs (right ankle on left knee) 4 times.
- 11:40 Plaintiff puts a new pair of briefs on S.P.
- 11:50 Plaintiff sprays air freshener around the bedroom.
- 11:54 Plaintiff wheels S.P. out of the bedroom.
- 3:12 Plaintiff rolls S.P. into the bedroom in a swivel chair with casters (perhaps a kitchen chair).
- 3:17 After spending 4 minutes assisting S.P. to walk from the chair to the bed, Plaintiff lies S.P. on the bed and slides her shoes off. With no gloves on, Plaintiff takes off S.P.'s shorts and examines the inside of S.P's briefs with her fingers for 20 seconds, in what appears to be an attempt to see if they are wet with urine. Apparently satisfied that the briefs are dry, Plaintiff brings S.P.'s wheelchair in and puts clean shorts on her.

c. Video footage from August 16, 2012, includes the period from 3:00 p.m. to 4:00 p.m. in S.P.'s bedroom.  Relevant portions of the footage include the following:

- 3:17 Plaintiff transfers S.P. from her wheelchair to her bed and lays her down. The process takes 3 minutes.

- 3:21 Plaintiff begins talking on her cell phone.  Plaintiff removes both of S.P.'s shoes in 5 seconds.  Plaintiff is not wearing gloves.  S.P. is now completely out of the frame of the video camera.  For the next 26 seconds, Plaintiff is bent over the bed, dong something outside of the frame. With her cell phone no longer held to her ear, Plaintiff climbs onto the bed and kneels on the bed with her feet dangling off the side of the bed. Fourteen (14) seconds later, Plaintiff wiggles her fee for 5 seconds.

- 3:23 After a total of 1 minute and 20 seconds, Plaintiff gets off the bed.  She removes S.P.'s shorts, removes S.P.'s briefs by tearing the sides, and disposes the briefs.

- 3:25 With gloves on now, Plaintiff uses wet wipes to clean S.P.'s perineal area for the next 3 minutes.  Afterwards, Plaintiff removes her gloves, appears to use hand sanitizer lotion, then begins putting a new pair of briefs on S.P.

- 3:31 In the process of putting S.P.'s briefs on, while S.P. is still lying on her back, Plaintiff uses her left hand to keep the brief in place against the inside of S.P.'s left thigh while Plaintiff appears to be pulling up the back of the briefs.  Plaintiff's left hand is in this location in S.P.'s groin area for 12 seconds.  Plaintiff then puts S.P.'s shorts on her and transfers her from the bed to the wheelchair.

- 3:35 C.P. enters the room, talks with Plaintiff, then leaves the room after 35 seconds.  Plaintiff wheels S.P. out of the room a minute later.

16. That on August 20, 2012 Defendants Maynard and Golet took Plaintiff into custody at the St. Peters Police Department to question her about the incident.  Plaintiff voluntarily signed a warning and waiver form and agreed to speak with Defendants Golet and Maynard.

17. That in the police interview, Plaintiff denied ever having any sexual contact of any sort with S.P.  She specifically denied ever penetrating S.P. with her fingers, ever placing her mouth on S.P.'s vagina, and ever rubbing on S.P. for sexual gratification.  Plaintiff viewed the video footage and further stated that:

   a. That the August 13, 2012 video footage depicts Plaintiff checking S.P.'s Depend undergarment for urination and that she was performing this action in the manner in which she was trained to check the Depend undergarment.

   b. That the August 14, 2012 footage depicts Plaintiff cleaning a large bowel movement.

   c. That the August 16, 2012 footage depicts Plaintiff attempting to take S.P.'s Depends undergarments off of her and Plaintiff could not reach her.  Plaintiff stated she climbed on the bed and removed S.P.s Depend undergarments in the scope and course of her employment as caretaker of S.P.

18. Plaintiff completed a voluntary statement for Defendants Golet and Maynard.

19. That on February 15, 2013, Defendants Timothy A. Lohmar and Defendant Rebecca Shaffar filed an indictment charging Plaintiff with three counts of deviant sexual assault and one count of forcible sodomy against S.P. Specifically, the Indictment charged:

- Count One: That Plaintiff committed the class C felony of deviate sexual assault, in that on or about August 13, 2012, Plaintiff for the purpose of arousing or gratifying her sexual desire had deviate sexual intercourse with S.P.

- Count Two: That Plaintiff committed the felony of forcible sodomy, in that on or about August 14, 2012, Plaintiff, for the purpose or arousing or gratifying her sexual desire had deviate sexual intercourse with S.P. by the use of forcible compulsion.

- Count Three: That Plaintiff committed the class C felony of deviate sexual assault, in that on or about August 14, 2012, Plaintiff for the purpose of arousing or gratifying her sexual desire had deviate sexual intercourse with S.P.

- Count Four: That Plaintiff committed the class C felony of deviate sexual assault, in that on or about August 16, 2012, Plaintiff for the purpose of arousing or gratifying her sexual desire had deviate sexual intercourse with S.P.

20. That RSMo. §566.010 defines "Deviate sexual intercourse", as any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim.

21. That a person commits the offense of sodomy in the first degree if he or she has deviate sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion. The offense of sodomy in the first degree or an attempt to commit sodomy in the first degree is a felony for which the authorized term of imprisonment is life imprisonment or a term of years not less than five years.

22. That the sum total of evidence against Plaintiff in the criminal case was the videotape surveillance.  None of the videotape surveillance depicts Plaintiff committing deviate sexual intercourse or forcible sodomy.

23. That an unsigned probable cause statement was attached to the Indictment.  The statement was purportedly by Defendant Golet and stated that on August 16, 2012 Plaintiff subjected S.P. to sexual contact by touching S.P.'s vagina for the purpose of arousing sexual desire.  S.P. is observed attempting to push Busby away with her foot while this is occurring.  It should be noted that S.P. has been diagnosed

with tuberous sclerosis and is severely disabled.  Plaintiff was employed as a caregiver for S.P.

24. That thereafter Plaintiff was arrested and held in the St. Charles County Jail. Plaintiff's bond was set at $50,000 cash only.

25. That Plaintiff, through her defense attorney, applied for a bond reduction and her request was denied.  Plaintiff was unable to post bond and remained confined in the St. Charles County Jail for the duration of the case.

26. That on September 30, 2013, at the request of Plaintiff's defense counsel, the Defendant's Lohmar and Shaffar reviewed the videotape evidence from August 13, 14, and 16, 2012.  Upon review of the videotapes it was discovered that the videotapes did not contain any evidence of sexual abuse on the part of the Plaintiff against S.P. and in fact there was no evidence whatsoever that Plaintiff had committed sexual abuse against S.P.

27. That on September 30, 2013, Plaintiff was released from the St. Charles County Jail on her own record recognizance and on October 2, 2013, the State entered a memorandum of Nolle Prosequi on all charges.

28. That Plaintiff was confined in the St. Charles County Jail for approximately 5 months.  Her two children, who reside with her full time, were placed with family members.  Her daughter attempted suicide.  Plaintiff lost her rental home, job, vehicle and was released with her life in shambles.  Plaintiff had to fight to regain custody of her son and had to work her hard to reestablish a residence, obtain a vehicle and rebuild her life.

## 42 U.S.C. §1983

### Reckless or Intentional Failure to Investigate
(14th Amendment- Substantive Due Process)

29. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

30. As more fully set forth above, throughout the investigation Defendants recklessly and/or intentionally failed to conduct an investigation that would have led to the exoneration of the Plaintiff.

31. In doing so, the Defendants purposely ignored evidence establishing Plaintiff's innocence.

32. This includes, but is not limited to, review of the videotape surveillance which unequivocally demonstrates that Plaintiff did not sexual abuse S.P.

33. Further Defendants Golet and Maynard acted with malice in their purposeful misrepresentation of the evidence in an attempt to establish probable cause. Specifically, Defendant Golet writes in his report of the August 14, 2012 video surveillance, "I observed that the wiping seemed excessive and appeared to go on long after [S.P] was clean.  Based on the position of Busby's hands during the incident I believed that she may have been placing fingers inside of [S.P.]'s vagina.  Busby also appeared on one occasion to be rubbing in side to side motion on or near [S.P.]'s clitoris." Golet later clarifies, "It should be noted that you can only partially view [S.P.] during this footage due to the camera angle." Golet's

statement that Plaintiff was possibly placing her fingers inside of S.P.'s vagina are pure speculation.

34. The acts and or/omissions described herein were committed with deliberate indifference to Plaintiff's constitutional rights.

35. The acts and/or omissions described herein violated Plaintiff's right to substantive due process.

36. The failure to investigate described in this Count caused the continued prosecution of Plaintiff despite her obvious innocence.

37. The acts and/or omissions of each of the Defendants were the legal and proximate cause of Plaintiff's injuries as described herein.

## COUNT II

### 42 U.S.C. §1983

-Malicious Prosecution-
(4th, 6th and 14th Amendments)

38. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

39. As more fully set forth above, Defendants maliciously caused the commencement and/or continuation of a baseless prosecution against Plaintiff without probable cause.

40. As more fully set forth above, Plaintiff suffered injury of a constitutional magnitude as a result of Defendants conduct, including the right to be free from

prosecution without probable cause, the right to a fair trial, and the unlawful deprivation of liberty.

41. The acts and/or omissions described herein were committed with deliberate indifference to Plaintiff's constitutional rights.

42. The acts and/or omissions of each of the Defendants named in this Count were the legal and proximate cause of Plaintiff's injuries as described herein.

## COUNT III

### 42 U.S.C. §1983

### -Failure to Intervene -

43. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

44. Defendants were aware of the unconstitutional conduct perpetuated by the other Defendants, and failed to intervene to prevent such conduct despite the opportunity to do so.

45. The acts and/or omissions described herein were committed with deliberate indifference to Plaintiff's constitutional rights.

46. The acts and/or omissions of each of the Defendants were the legal and proximate cause of Plaintiff's injuries as described herein.

COUNT IV

Missouri State Law

-False Arrest -

47. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

48. The Defendant Officers, acting in concert with each other, did willfully and unlawfully under color of legal authority, illegally arrest and/or cause the illegal arrest of Plaintiff and detained her against his will without due and legal process, and with a lack of probable cause.

49. The Defendant's conduct was the legal and proximate cause of Defendant's damages as described herein.

Count V

Missouri State Law

-Indemnification-

50. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

51. Defendant St. Charles County is liable for the acts and omissions of their employees pursuant to their statutory duty to indemnify them.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court will:

a. assume jurisdiction of this cause to determine this controversy and case for hearing on the merits;

b. award compensatory and actual damages to Plaintiff, and against Defendants, jointly and severally, in the amount of $5,000,000.00;

c. award punitive damages to Plaintiff, and against the Defendants, jointly and severally, in the amount of $5,000,000.00;

d. award to Plaintiff his costs and attorney fees, pre-judgment interest, post-judgment interest, all other damages allowed by law, and such other and further relief the Court deems just and proper.

FEATHERSTON LAW FIRM

By: */s/ Melissa A. Featherston*
Melissa A. Featherston, #54563MO
Attorney for Plaintiff
8777 Big Bend Blvd.
Suite C
St. Louis, MO 63117
314-842-5222 (telephone)
314-842-5212 (facsimile)
featherston.melissa@gmail.com