UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PEGGY SUE BUSBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:14CV1365 CDP |
| | ) |
| TIMOTHY A. LOHMAR, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Peggy Busby brought this suit under 42 U.S.C. § 1983 after state prosecutors dismissed sexual assault charges they had previously brought against her. Busby claims that the detectives on the case, defendants Chris Golet and Nicole Maynard, violated her constitutional rights by recklessly or intentionally failing to conduct a proper investigation, by maliciously causing the commencement and/or continuation of a baseless prosecution, and by failing to intervene to prevent unconstitutional conduct perpetuated by other defendants.[1]

I conclude that defendants Golet and Maynard are entitled to qualified immunity on these § 1983 claims, so I will grant their motion for summary judgment. I decline to exercise supplemental jurisdiction over Busby's remaining

---

[1] Busby originally named St. Charles County, St. Charles County Prosecuting Attorney Timothy A. Lohmar, and Assistant Prosecuting Attorney Rebecca Shaffer as defendants in the case. In November 2015, Busby dismissed her claims against these defendants without prejudice.

state law claims of false arrest and indemnification. The action will therefore be dismissed.

## *Summary Judgment Standard*

When considering a motion for summary judgment, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As the moving parties, defendants must establish that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving parties have met this burden, the nonmoving party may not rest on the allegations in her pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e).

## *Evidence Before the Court on the Motion[2]*

During the relevant period, defendants Golet and Maynard were detectives with the St. Peters, Missouri, Police Department. On August 17, 2012, Golet and Maynard were contacted by an officer of the St. Charles City Police Department with information that a woman wanted to make a report about alleged sexual abuse that occurred at her home in St. Peters. Golet and Maynard thereafter met with the

---

[2] Busby admits all of the facts asserted in defendants' Statement of Uncontroverted Facts. *See* ECF #33. They are included in this summary of undisputed facts.

woman who reported that she had recently hired Busby to care for her severely disabled twenty-seven-year-old daughter, S.P. S.P. needed twenty-four-hour care, and Busby had thus far worked eleven shifts with S.P. Busby was alone with S.P. during five of those shifts. The mother reported that she had recently noticed S.P. to become combative with Busby, which was uncharacteristic behavior for S.P. The mother became suspicious because of this and reviewed video footage of instances when Busby was caring for S.P. alone.[3] The mother reported to Golet and Maynard that she observed three instances of conduct on the video footage that she suspected were sexual in nature, and she provided details to Golet and Maynard of what she observed on the video.[4] The dates on which these instances are alleged to have occurred are August 13, August 14, and August 16, 2012. Golet asked the mother if she was willing to submit a written statement, and she agreed to do so.

After speaking with the mother, Golet and Maynard went to the home and viewed video footage depicting the incidents as referenced by the mother. The mother also provided Golet with a copy of Busby's employment application. While Golet and Maynard were at the residence, another of S.P.'s caregivers, Karen Arnold, was present and told Golet that she had been a caregiver for S.P. for

---

[3] The mother had a video surveillance system inside her home.
[4] The allegations involved an instance where Busby placed her hand inside the victim's diaper (which Busby says was to determine whether it was wet) and two incidents involving diaper changes, one of which took 45 minutes.

three years. Arnold told Golet that she had also watched the video footage and thought Busby's behavior was suspicious and believed that Busby had assaulted S.P. Arnold provided a written statement to Golet.

On August 20, Golet and Maynard met Busby prior to her shift that day with S.P. Busby accompanied Golet and Maynard to the police station for questioning. Upon being advised of her constitutional rights under *Miranda*,[5] Busby responded to Golet's questions regarding the three instances in question and denied having had any type of sexual contact with S.P. Busby and Golet viewed the video footage together, and Busby provided non-sexual reasons for her conduct in each instance. Busby also provided a written statement to Golet. Golet then returned Busby to her vehicle.

Thereafter, Golet interviewed another of S.P.'s caregivers, Elly Strait, who provided a written statement regarding what she thought were suspicious statements made by Busby regarding the method by which she checked S.P.'s diaper. Golet also contacted two of Busby's prior employers, who reported no previous incidents involving Busby.

Golet re-contacted S.P.'s mother and advised her of Busby's explanations for the alleged incidents. S.P.'s mother disputed these explanations. She also told Golet that she had viewed additional video footage showing Busby not to engage in suspicious behavior when she (the mother) was known to be in the house and

that additional video footage showed other caregivers not to engage in the same type of conduct when in similar circumstances, *i.e.*, changing and cleaning S.P. after bowel movements.  S.P.'s mother gave the additional video footage to Golet and provided another written statement.  S.P.'s mother also gave Golet copies of daily logs completed by S.P.'s caregivers as well as photographs showing where the video security cameras were placed in the home and the labeled washcloth drawer in S.P.'s room.

Golet thereafter prepared and finalized a police report in which he described the conversations he had with Busby, S.P.'s mother, Arnold, and Strait and also described personal observations he made while viewing the video footage.  With his Report, Golet also included the written statements made by Busby, S.P.'s mother, Arnold, and Strait; the advice of rights form initialed and signed by Busby; daily caregiver logs; and photographs depicting the placement of the security cameras and the labeled washcloth drawer.  The report also included a supplemental narrative report made by Maynard describing the initial conversation with S.P.'s mother on August 17, as well as Maynard's personal observations made while viewing the video footage.

On or about September 19, 2012, Golet submitted the report to the St. Charles County Prosecuting Attorney's Office as part of a warrant application. The video footage was also provided to the Prosecuting Attorney's Office.  On or

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

about February 15, 2013, a grand jury returned an indictment charging Busby with three counts of deviate sexual assault and one alternate count of forcible sodomy. Busby was arrested on May 2, 2013, by an officer of the St. Peters Police Department. Golet was not the arresting officer but was present when Busby was placed under arrest. On October 2, 2013, the State entered a memorandum of Nolle Prosequi on all charges.

## *Discussion*

42 U.S.C. § 1983 creates a remedy to redress a deprivation of a federally protected right by a person acting under color of state law. *Jones v. United States*, 16 F.3d 979, 981 (8th Cir. 1994). Qualified immunity protects a government official from liability in a § 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known. *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). In determining whether a government official is entitled to qualified immunity, I must ask (1) whether the facts alleged establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Winslow v. Smith,* 696 F.3d 716, 738 (8th Cir. 2012) (internal quotation marks and citation

omitted).

Here, Busby claims that Golet and Maynard violated her Fourteenth Amendment right to substantive due process when they recklessly or intentionally failed to conduct a proper investigation, which would have revealed information to exonerate her. Busby also claims that she was subjected to malicious prosecution, in violation of her Fourth, Sixth, and Fourteenth Amendment rights. Finally, Busby claims that Golet and Maynard were aware that she was being subjected to unconstitutional conduct but failed to intervene to prevent such conduct, demonstrating deliberate indifference to her constitutional rights. For the following reasons, Golet and Maynard are entitled to qualified immunity on Busby's constitutional claims.

A.   <u>Reckless or Intentional Failure to Investigate</u>

"A faulty investigation by a state police officer which leads to the deprivation of a suspect's liberty only violates the Fourteenth Amendment's due process clause where the suspect shows the officers 'intentionally or recklessly failed to investigate, thereby shocking the conscience.'" *Hawkins v. Gage Cnty., Neb.,* 759 F.3d 951, 956 (8th Cir. 2014) (quoting *Amrine v. Brooks*, 522 F.3d 823, 834 (8th Cir. 2008)). Allegations of negligent or grossly negligent conduct do not meet this standard. *Id.* (citing *Amrine*, 522 F.3d at 833; *Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009)).

The undisputed evidence before the Court shows that Golet and Maynard

received a report of suspected sexual abuse whereupon they interviewed the reporting party – the victim's mother – and obtained a written statement from her. They then viewed video footage of the conduct that gave rise to the suspicions of abuse and interviewed an additional caregiver who had trained and worked with Busby. This caregiver in turn reported to Golet and Maynard that Busby's behavior as depicted in the video footage appeared suspicious. This caregiver likewise provided a written statement to the detectives. As part of this investigation, Golet reviewed the video footage on multiple occasions and interviewed Busby, which included her viewing the video footage with Golet and explaining the conduct depicted. Busby likewise provided a written statement to Golet. Golet continued in the investigation of the matter by interviewing an additional caregiver who worked with Busby, from whom he obtained a written statement; contacting Busby's previous employers; conducting an additional interview with the victim's mother regarding Busby's explanations; obtaining and reviewing additional video footage of Busby's care of the victim as well as care given by other providers; obtaining photographs depicting the placement of security cameras in the victim's home; obtaining a photograph of the washcloth drawer in the victim's bedroom; and obtaining copies of daily logs completed by the victim's caregivers. Golet completed the investigation and filed his report one month after first receiving the report of suspected abuse.

This undisputed record shows an extensive investigation during which Golet

and Maynard obtained and reviewed video and documentary evidence, as well as statements from individuals relevant to the investigation. Busby was able to present her side of the story, albeit tempered by incriminating statements made by others regarding her conduct. *Cf. Amrine,* 522 F.3d at 833 (officers entitled to qualified immunity on claim of unlawful arrest given inculpatory physical evidence and incriminating statements, despite exculpatory statement given by independent witness). Busby admits there were no other witnesses who could have provided any direct information regarding the alleged contact she had with S.P. during the incidents in question. (Busby Depo. at 61-64.) Although Busby contends that an investigation into the background of S.P.'s mother would have shown the mother to have previously accused other agencies and individuals of misconduct toward S.P., nothing in the record shows that Busby would have been exonerated if either Golet or Maynard had knowledge of any of these previous complaints. Indeed, none of the previous complaints involved alleged sexual misconduct. (*Id.* at 33-34, 36-41.) The failure to investigate unrelated matters does not shock the conscience. In any event, "the due process clause does not require a perfect investigation." *Hawkins*, 759 F.3d at 958.

Busby contends that the videos show her to simply be doing her job instead of abusing S.P. and that Golet's and Maynard's characterization of the conduct depicted in the video footage was inaccurate, thereby evincing their constitutionally deficient investigation. The videos, the police report written by

Golet, including the supplemental narrative by Maynard, and Busby's statements about what she was doing are all part of the summary judgment record. The videos are not inconsistent with the police report and the officers' statements, although they could also be interpreted to be consistent with Busby's explanations. The police report explains that some of the actions reported are out of the view of the cameras, and the report used equivocating language such as "appears" and "I believed that she may have been placing fingers inside of [S.P's] vagina." (Deft. Exh. A at p. 4). Maynard's narrative says: "However, the video was unclear and I could not determine for sure" whether Busby was placing her fingers in S.P.'s vagina. (*Id.* at p. 8). Even viewing the video and the other evidence in the light most favorable to Busby, there is nothing indicating that either Golet or Maynard purposely ignored evidence suggesting that Busby was innocent or purposely sought to implicate Busby in the face of evidence to the contrary. *See Hawkins*, 759 F.3d at 958; *Amrine*, 522 F.3d at 835. In addition to the video evidence that they themselves viewed, Golet and Maynard obtained statements and opinions from S.P.'s mother and from a trained, long term caregiver that the conduct depicted in the videos was suspicious and assaultive in nature. Even if Golet and Maynard were mistaken in their belief that the videos showed conduct consistent with sexual abuse, qualified immunity protects officers from mistaken judgment. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 672 (8th Cir. 2007). It is not the function of the police to establish guilt. *Hawkins*, 759 F.3d at 957. Instead,

"the responsibility of sorting out conflicting testimony and assessing the credibility of putative victims and witnesses lies with the courts." *Id.* at 957-58 (internal quotation marks and citation omitted).

Golet's and Maynard's investigation of Busby's conduct in relation to the alleged sexual abuse of S.P. was thorough and prompt and focused on sources most capable of providing information relevant to the investigation, including exculpatory information provided by Busby herself. The course of this investigation was neither reckless nor shocked the conscience and, as such, did not violate Busby's Fourteenth Amendment right to due process. Because the undisputed facts fail to show a violation of a clearly established constitutional right, Golet and Maynard are entitled to qualified immunity on Busby's claim of reckless or intentional failure to investigate.

B.  Malicious Prosecution

In 2001, the Eighth Circuit observed that malicious prosecution, alone, is not a constitutional injury. *See Kurtz v. City of Shrewsbury,* 245 F.3d 753, 758 (8th Cir. 2001) ("Moreover, this court has uniformly held that malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury."); *Technical Ordnance, Inc. v. United States,* 244 F.3d 641, 650 (8th Cir. 2001) ("The general rule is that an action for malicious prosecution does not state a claim of constitutional injury."). More recently, the court expressed uncertainty as to whether "malicious prosecution is a constitutional violation at all," *Harrington*

*v. City of Council Bluffs, Iowa,* 678 F.3d 676, 679 (8th Cir. 2012), and "specifically *declined to decide* whether a Fourth Amendment right against malicious prosecution exists." *Bates v. Hadden*, 576 Fed. Appx. 636, 639 (8th Cir. 2014) (citing *Harrington*, 678 F.3d at 680) (emphasis in *Bates*). Indeed, in *Bates*, the court held that a police officer would be entitled to qualified immunity on a claim of malicious prosecution because "[n]o 'reasonable officials acting in [the officer's] position would . . . have understood they were violating' [plaintiff's] constitutional right against malicious prosecution because no such constitutional right had been clearly established." *Id.* (quoting *Harrington,* 678 F.3d at 680).

The same holds true here. While Busby argues that her claim of malicious prosecution "may be taken to argue a Fourth Amendment or procedural due process violation,"[6] the state of the law surrounding the cognizability of such a claim under § 1983 at the time Golet and Maynard are alleged to have violated Busby's constitutional rights was nevertheless so uncertain that it cannot be said that either Golet or Maynard would understand that their actions violated any constitutional right to be free from malicious prosecution.

Golet and Maynard are therefore entitled to qualified immunity on Busby's § 1983 claim of malicious prosecution.

---

[6] Pltf.'s Resp. in Oppos., ECF #31 at p. 8.

C.   Failure to Intervene

While a law enforcement officer who knows another officer is using excessive force has a duty to intervene, the Eighth Circuit has not recognized a "duty to intervene to prevent other constitutional violations." *Livers v. Schenck,* 700 F.3d 340, 360 (8th Cir. 2012) (citing *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981)).  Busby does not claim that she was subjected to excessive use of force or that any defendant failed to intervene to prevent such force.  Instead, Busby contends only that defendants failed to intervene to prevent unconstitutional conduct perpetuated by other defendants.  Because there is no clearly established law regarding a law enforcement officer's duty to intervene outside of the excessive force context, Golet and Maynard are entitled to qualified immunity on Busby's § 1983 claim that they failed to intervene to prevent other alleged unconstitutional conduct.  *Id.; see also Hess v. Ables,* 714 F.3d 1048, 1052 (8th Cir. 2013).

D.   State Law Claims

In Counts IV and V of her complaint, Busby brings state law claims of false arrest and indemnification.[7]  Because I will dismiss all claims over which this Court has original jurisdiction, I decline to exercise supplemental jurisdiction over these state law claims.  28 U.S.C. § 1367(c)(3).  *See also Anderson v. Franklin*

---

[7] Busby's claim of indemnification appears to be brought against only St. Charles County.  As noted *supra*, Busby previously dismissed her claims against this defendant.

*Cnty., Mo.*, 192 F.3d 1125, 1131 (8th Cir. 1999); *American Civil Liberties Union v. City of Florissant*, 186 F.3d 1095, 1098-99 (8th Cir. 1999) (when state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, state claims are ordinarily dismissed without prejudice); *Willman v. Heartland Hosp. E.*, 34 F.3d 605, 613-14 (8th Cir. 1994) (same).

Accordingly,

**IT IS HEREBY ORDERED** that defendants Chris Golet and Nicole Maynard's Joint Motion for Summary Judgment [ECF #24] is **GRANTED** to the extent they seek qualified immunity on the claims raised in Counts I, II, and III of plaintiff's complaint.

**IT IS FURTHER ORDERED** that the claims raised against defendants Golet and Maynard in Counts I, II, and III of plaintiff's complaint are dismissed with prejudice.

**IT IS FURTHER ORDERED** that the remaining state law claims raised against defendants Golet and Maynard are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

Judgment is entered accordingly.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of January, 2016.